IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALMA CRUZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:19-cv-340-M-BN |
| | § | |
| NTFN, INC., BANK OF AMERICA N.A., | § | |
| and JPMORGAN CHASE BANK, N.A., | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b).

Defendant JPMorgan Chase Bank, N.A. ("Chase") removed this action from County Court at Law Number Two, Dallas County, Texas , to the United States District Court for the Northern District of Texas, Dallas Division, under 28 U.S.C. §§ 1332, 1441 and 1446 and asserts that co-defendant NTNF, Inc.'s ("NTNF") citizenship should be disregarded for purposes of diversity because it is merely a nominal party that has been improperly joined.

At the Court's direction, *see* Dkt. No. 5, Plaintiff Alma Cruz filed a brief explaining whether, as Chase argues in its Notice of Removal, NTNF was improperly joined and, if so, should be dismissed from this lawsuit and whether subject matter jurisdiction therefore exists based on the complete diversity between any remaining,

-1-

properly joined parties, *see* Dkt. No. 11. Chase did not file a reply and the time to do so has passed.

The undersigned concludes that, disregarding the improperly joined defendant, complete diversity of citizenship exists between all properly-joined parties, and the Court has subject matter jurisdiction.

## Background

On February 4, 2019, Plaintiff Alma Cruz filed her Original Petition and Application for Temporary Restraining Order ("the "Petition") in County Court at Law No. 2 in Dallas County, Texas, styled *Alma Cruz v. NTNF, Inc., Bank of America, N.A., and JPMorgan Chase Bank, N.A.,* Cause No. CC-19-00737-B (the "State Court Action). Plaintiff seeks to set aside the foreclosure of real property located at 4400 Flamingo Way, Mesquite, Texas 75150. She asserts claims for violations of the Texas Debt Collection Act and Texas Property Code and for breach of contract against Chase and Bank of America, N.A. ("BofA"). *See* Dkt. No. 1-1.

Plaintiff also alleges a Breach of Fiduciary Duty Claim against NTFN. *See* Dkt. No. 1-1 at 16. She alleges that,

> [a]s an entity steering the financing of its newly constructed homes to a mortgage banker, NTFN had a fiduciary duty to bring a mortgage banker in to finance the transaction (the Loan) who would obtain a mortgage loan for Plaintiff on the best possible price and terms, and to fully disclose all financial benefit to NTFN or other persons from such financing arrangement. On information and belief, Plaintiff would show that all such benefits to NTFN were not adequately disclosed to Plaintiff, and that the cost of credit to Plaintiff was higher than otherwise would have been necessary had Plaintiff not been steered to dealing with NTFN and its assignee(s) in regard to the Loan. As a mortgage banker, NTFN had an ongoing fiduciary duty to Plaintiff to obtain a mortgage loan on the best

price and terms possible. If in fact there was an assignment of the Loan to Chase Manhattan Mortgage Corporation breached that duty, in part in the apparent selection of Chase and/or BofA as a mortgagee and/or mortgage servicer, and is liable to Plaintiff for the damages incurred by Plaintiff in the acts and omissions of Chase and/or BofA or other parties in relation to the Loan, including the failure of Chase and/or BofA and/or such other parties to deal in good faith in attempting to modify and collect the Loan. At the time of the origination of the Loan or within a reasonable time thereafter, NTFN was charged with knowledge of the pattern and practice of Chase and BofA's disregard (including their respective affiliate entities) of applicable law in the servicing of mortgage loans, and should not have attempted to assign ownership and/or servicing of the Loan to Chase Manhattan Mortgage corporation, thus jeopardizing Plaintiff's ownership and use of the Property.

*Id.*

Chase removed the case to federal court based solely on diversity of citizenship under 28 U.S.C. § 1332(a). *See* Dkt. No. 1 at 2. It contends that complete diversity exists because Plaintiff is a citizen of Texas, Chase is a citizen of Ohio, BofA is a citizen of North Carolina, and NTFN "was improperly joined and, therefore, its citizenship should be disregarded for diversity jurisdiction purposes." *Id.* at 4.

Chase argues that NTFN was improperly joined to defeat jurisdiction because Plaintiff cannot establish a claim against it. The sole cause of action Plaintiff asserts against NTFN – the original lender on Plaintiff's mortgage loan – is for breach of fiduciary duty. Chase argues that Plaintiff cannot establish a breach of fiduciary duty claim against NTFN because, as a matter of law, there is no fiduciary duty between a mortgage lender and a borrower. Chase also contends that Plaintiff's claim against NTFN is barred by the statute of limitations. *See id.* at 4-8.

Plaintiff's response is almost verbatim the same as the plaintiffs' response quoted

by this Court in *Snowden v. Wells Fargo Bank, N.A.*, No. 3:18-cv-1797-K-BN, 2018 WL 441794 (N.D. Tex. Aug. 27, 2018). *Compare* Dkt. No. 11 at 1-7 to *Snowden*, 2018 WL 441794, at \*3 - 6. In short, Plaintiff argues that she can establish a claim against NTFN and, relying on *Kelly v. Gaines*, 181 S.W.3d 394 (Tex. App. – Waco 2005), *rev'd by Gaines v. Kelly*, 235 S.W.3d 179 (Tex. 2007)), argues that there is a fiduciary duty between a mortgage lender and borrower. She also argues that her claim is not time barred because the statute of limitations should be tolled under the discovery rule. *See* Dkt. No. 11.

## Legal Standards

Federal courts have an independent duty to examine their own subject matter jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("[A]ny federal court may raise subject matter jurisdiction *sua sponte.*").

A defendant may remove an action filed in state court to federal court if the action is one that could have originally been filed in federal court. *See* 28 U.S.C. § 1441(a). And a defendant may remove a case that includes a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of 28 U.S.C. § 1331) and a claim not within the Court's original or supplemental jurisdiction or that has been made nonremovable by statute, so long as the action would be removable without the inclusion of the nonremovable claim. *See id.* § 1441(c)(1). Statutes that authorize removal are meant to be strictly construed, and any doubt as to the propriety

of removal should be resolved in favor of remand. *See Hood ex rel. Miss. v. JP Morgan Chase & Co.*, 737 F.3d 78, 89 (5th Cir. 2013); *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007).

The removing party bears the burden of establishing jurisdiction. *See Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 417 (5th Cir. 2001). A federal court's jurisdiction is limited, and federal courts generally may hear a case of this nature only if it involves a question of federal law or where diversity of citizenship exists between the parties. *See* 28 U.S.C. §§ 1331, 1332. "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). "[T]he basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Ill. Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 (5th Cir. 1983) (citation and internal quotation marks omitted). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

28 U.S.C. § 1332 creates federal subject matter jurisdiction where diversity of citizenship exists between the parties, where each plaintiff's citizenship is diverse from each defendant's citizenship, and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1332(a), (b). Failure to allege adequately the basis of diversity requires remand. *See Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 805 (5th Cir. 1991). If no amount of damages has been alleged in the state court petition, the defendant must prove by a

preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum. *See* 28 U.S.C. § 1446(c)(2); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir. 1995). And, where diversity jurisdiction requires that the parties be "citizens of different States," 28 U.S.C. § 1332(a)(1), the Court cannot exercise jurisdiction if any plaintiff shares the same citizenship as any defendant, *see Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003). "For diversity jurisdiction, the party asserting federal jurisdiction must distinctly and affirmatively allege [ ] the citizenship of the parties." *Howery*, 243 F.3d at 919.

"When a defendant removes a case to federal court on a claim of improper joinder, the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper. Indeed, until the removing party does so, the court does not have the authority to do more; it lacks the jurisdiction to dismiss the case on its merits." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 576 (5th Cir. 2004) (en banc). "In every case where a diverse defendant proves that the plaintiff's decision to join an in-state party is improper, the diverse defendant gains access to the federal courts. If, however, the foreign defendant fails to prove the joinder improper, then diversity is not complete, the diverse defendant is not entitled to remove, and remand is mandated." *Id.* at 575. A defendant alleging that a non-diverse defendant is improperly joined has the heavy burden of "demonstrating either '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Crockett v. R.J. Reynolds Tobacco*

*Co.*, 436 F.3d 529, 532 (5th Cir. 2006) (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).

Thus, where there is no dispute or allegation of actual fraud concerning the fact that both plaintiff and a defendant are citizens of the same state, the sole concern is whether, as a matter of law, Plaintiff can establish a valid state-law cause of action against the non-diverse defendant. *See Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999). Under this second prong of the improper-joinder test, the standard is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against [a non-diverse] defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against [a non-diverse] defendant." *Smallwood*, 385 F.3d at 573. "A mere theoretical possibility of recovery under local law will not preclude a finding of improper joinder." *Id.* at 573 n.9 (internal quotation marks omitted).

But the United States Court of Appeals for the Fifth Circuit has further instructed that, "[s]ince the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Id.* "The burden on the removing party is to prove that the joinder of the in-state parties was improper – that is, to show that sham defendants were added to defeat jurisdiction," such that "[a] showing that the plaintiff's case is barred as to all defendants is not sufficient" and, "[w]hen the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally

-7-

dispositive of all defendants rather than to the in-state defendants alone, the requisite showing has not been made." *Id.* at 575; *see also id.* at 574 (explaining that, "when, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit" and that, "[i]n such cases, it makes little sense to single out the in-state defendants as 'sham' defendants and call their joinder improper" and, "[i]n such circumstance, the allegation of improper joinder is actually an attack on the merits of plaintiff's case as such").

Ordinarily, the court must conduct a Federal Rule of Civil Procedure 12(b)(6)-type analysis, examining the allegations in the complaint to determine whether the plaintiff has stated a claim against the non-diverse defendants. *See Larroquette v. Cardinal Health 200, Inc.*, 466 F.3d 373, 376 (5th Cir. 2006). If, however, the complaint has "omitted discrete facts, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* But the Fifth Circuit has "caution[ed] that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the [non-diverse] defendant" and that "any piercing of the pleadings should not entail substantial hearings." *Smallwood*, 385 F.3d at 573-74. "Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the [non-diverse] defendant alleged

to be improperly joined. Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Id.* at 574. Further, "[i]n this inquiry the motive or purpose of the joinder of in-state defendants is not relevant." *Id.*

In making the improper-joinder determination, the Court will "evaluate all of the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff" and "then examine relevant state law and resolve all uncertainties in favor of the nonremoving party." *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 260 n.8, 264 (5th Cir. 1995) (quoting *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205–06 (5th Cir. 1983)).

The Fifth Circuit recently clarified that the federal pleading standard, not a state pleading standard, applies to determine whether a nondiverse defendant has been improperly joined. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 200-01 (5th Cir. 2016) (abrogating three *post-Smallwood* Fifth Circuit cases applying a state pleading standard instead the federal pleading standard). The "12(b)(6)-type analysis ... is shorthand for the federal pleading standard itself ... promulgated by the Supreme Court in the *Bell v. Twombly* and *Ashcroft v. Iqbal* opinions." *Id.* at 203.

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the

-9-

plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have

"substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ____, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)). The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346.

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v.*

-11-

*Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

## Analysis

Plaintiff alleged only one cause of action against NTFN: breach of fiduciary duty. Plaintiff alleges that "NTFN had a fiduciary duty to bring a mortgage banker in to finance the transaction (the Loan) who would obtain a mortgage loan for Plaintiff on the best possible price and terms, and to fully disclose all financial benefits to NTFN or other persons from such financing arrangement." Dkt. No. 1-1 at 16. Plaintiff also alleges that, "[a]s a mortgage banker, NTFN had an ongoing fiduciary duty to Plaintiff to obtain a mortgage loan on the best price and terms possible." *Id.*

Assuming (as the parties do) that NTFN is a Texas citizen, the issue, then, is whether Plaintiff properly states a claim against NTFN.

In Texas, the elements for a claim of breach of fiduciary duty are: (1) a fiduciary relationship between Plaintiffs and the defendant, (2) a breach by the defendant of its

fiduciary duty to Plaintiffs, and (3) an injury to Plaintiffs or a benefit to the defendant as a result of the breach. *See Anderton v. Cawley*, 378 S.W.3d 38,51 (Tex. App. – Dallas 2012, no pet.).

As in *Adams v. U.S. Bank, N.A.,* No. 3:17-cv-723-B-BN, 2018 WL 2164517 (N.D. Tex. March 6, 2018), Plaintiff fails to state a claim here against NTFN because she cannot establish the first element – that she and NTFN are in a fiduciary relationship. *See Gergan v. Kelly*, 355 S.W.3d 223, 227 (Tex. App. – Houston [1st Dist.] 2011, no pet.). Accordingly, there is no reasonable basis for the Court to predict that Plaintiff might be able to recover against NTFN on her alleged breach of fiduciary duty claim.

The analysis in *Adams* applies equally well here. As the Court explained in concluding that the home builder sued in *Adams* was improperly joined through a breach of fiduciary duty claim:

> Texas recognizes two types of fiduciary relationships. *See id.* "The first is a formal fiduciary relationship," such as "the relationship of an attorney-client, principal-agent, or trustee-beneficiary relationship." *Id.* The second is an informal fiduciary relationship – that is, a confidential relationship "where one person trusts and relies on another, whether the relation is a moral, social, domestic or purely personal one."*Id.* The Texas Supreme Court has recognized that "confidential relationships may arise not only from the technical fiduciary relationships such as attorney-client, trustee-cestui que trust, partner and partner, etc. – which as a matter of law are relationships of trust and confidence – but may arise informally from moral, social, domestic or purely personal relationships." *Thigpen v. Locke*, 363 S.W.2d 247, 253 (1962). "The existence of the fiduciary relationship is to be determined for the actualities of the relationship between the parties involved." *Id.*
> Ms. Adams cannot establish that she and Cheldan have a formal relationship that triggers a fiduciary duty. Texas does not appear to recognize a relationship between a home builder who refers home buyers to a mortgagee and a home buyer as one of the relationships that create

a fiduciary duty. *See* Dkt. No. 8 at 3 (Ms. Adams acknowledging that she has not identified a "substantial body of case law" concerning any purported fiduciary relationship between a home builder who refers a home seller to a mortgagee). After all, as U.S. Bank correctly notes, Texas law generally does not recognize a fiduciary duty between a mortgagor and mortgagee. *See* Dkt. No. 18 at 4 (citing *Fed. Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 708-09 (Tex. 1990)). And the relationship between a home builder who merely refers a home buyer to a mortgagee is even more removed.

Ms. Adams also cannot establish that Cheldan owes her a fiduciary duty by virtue of their informal relationship.

"A fiduciary relationship is an extraordinary one and will not be lightly created." *Gergain*, 355 S.W.3d at 228. "[A] person is justified in placing confidence in the belief that another will act in his or her best interest only where he or she is accustomed to being guided by the judgment or advice of the other party, and there exists a long association in a business relationship as well as [a] personal friendship." *Id*. An informal relationship requires proof that a special relationship was created, therefore causing Ms. Adams to be guided by the judgment or advice of another. *See id*. In order for a special relationship to exist the parties must have had a relationship of trust and confidence that existed prior and apart from the agreement in the suit. *See id*. at 229.

Ms. Adams alleges that Cheldan steered her to work with Guild to finance the Property. But she fails to provide any explanation in her State Court Petition or in her brief as to why she was "justified in placing confidence in the belief that" Cheldan would act in her best interest in the first place. She has not suggested that she allowed Cheldan to "steer" her toward a particular financing out of some long-standing personal or business relationship. *Cf. Lee v. Hasson*, 286 S.W.3d 1, 15 (Tex. App. – Houston 2007, pet. denied) ("Hasson and Lee shared a long-standing business relationship and a close personal family relationship well beyond casual friendship" and where "Lee relied on Hasson for moral, financial, and personal guidance or support. Moreover, their relationship began in 1993 and therefore predated their agreements by approximately six years."); *Flanary v. Mills*, 150 S.W.3d 785, 794 (Tex. App. – Austin 2004, pet. denied) (finding that a fiduciary relationship existed where the parties were related and had a long-standing working relationship).

Nor is there any other indication that Ms. Adams had some objective reason to believe that she would be justified in placing her confidence in Cheldan to act in her best interest. This failure is especially notable since, in her motion to remand, Ms. Adams appears to acknowledge that she has not identified case law suggesting that a fiduciary relationship between a home builder and a home owner exists.

-14-

*See* Dkt. No. 7 at 3 (Ms. Adams acknowledging that "[t]here is not yet ... a substantial body of case law applying the principles within the fiduciary duties that Cheldan ... owed to Plaintiff").

The State Court Petition, at most, suggests that Ms. Adams may have had some subjective belief that she could trust Cheldan based on its status as a home builder. But, as explained above, the home builder-home buyer relationship is not a formal relationship that independently creates a fiduciary duty. And Ms. Adams's "subjective trust and feelings of trust and confidence [are] not ... enough to create a fiduciary relationship" either. *Gergain* 355 S.W.3d at 229.

Because Ms. Adams is unable to establish the first element – the existence of a fiduciary relationship between her and Cheldan – the Court should conclude that U.S. Bank has met its heavy burden of establishing that Ms. Adams is unable "to establish a cause of action against the non-diverse party in state court." *Crockett*,436 F.3d at 532.

*Adams v. U.S. Bank, N.A.*, No. 3:17-cv-723-B-BN, 2017 WL 3084572, at *6-*8 (N.D. Tex. June 29, 2017), *rec. adopted*, 2017 WL 3052491 (N.D. Tex. July 19, 2017); *see also Snowden*, 2018 WL 441794, at *13-*14 (same).

Based on this same analysis, Texas does not appear to recognize a relationship between either (a) home builder or seller like NTFN – even one that refers home buyers to a mortgagee – or a lender and (b) a home buyer as one of the relationships that create a fiduciary duty. And, as in *Adams*, Plaintiff cannot establish that NTFN owes her a fiduciary duty by virtue of their informal relationship, and Plaintiff fails to provide any explanation in her state court Petition or in her response brief as to why she was justified in placing confidence in the belief that NTFN would act in her best interest in the first place and has not provided any other indication that she had some objective reason to believe that she would be justified in placing confidence in NTFN to do so. This is so even if the Court considers the expanded allegations in support of their breach of fiduciary duty claim that Plaintiffs raise in their response brief. *See* Dkt. No.

11 at 2 ("Plaintiffs argue that NTFN, having steered Plaintiff's Loan to Wells Fargo, had a fiduciary duty to Plaintiff to see that Plaintiff obtained a loan on the best pricing and terms possible...."). Chase has met its heavy burden of establishing that Plaintiff is unable to establish a cause of action against NTFN in state court for breach of fiduciary duty because she is unable to establish the first element – the existence of a fiduciary relationship between her and NTFN.

Likewise, as the Court explained in concluding that the plaintiff's breach of fiduciary duty claim against the mortgage lender in *Adams* should be dismissed with prejudice under Rule 12(b)(6),

> Texas courts have consistently held that the mortgagor-mortgagee relationship is not a special relationship that generally gives rise to a fiduciary duty. *See Lovell v. W. Nat. Life Ins. Co.,* 754 S.W.2d 298 (Tex. App. – Amarillo 1988, writ denied); *accord Fed. Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 708-09 (Tex. 1990) ("The relationship of mortgagor and mortgagee ordinarily does not involve a duty of good faith.") (citing *English v. Fischer*, 660 S.W.2d 621, 622 (Tex. 1983)). The same is also true of a loan servicer and mortgagee. *See Williams v. Fed. Nat. Mortg. Ass'n*, No. 2:11-cv-157-J, 2012 WL 443986 at *3 (N.D. Tex. Feb. 13, 2012) (citing *Hinton v. Federal Nat. 7 Mortg. Ass'n*, 945 F. Supp. 1052, 1060 (S.D. Tex. 1996), *aff'd* 137 F.3d 1150 (5th Cir. 1998)). These courts reason that, "'[g]enerally, the relationship between a borrower and a lender [or loan servicer] is an arm's length business relationship in which both parties are looking out for their own interests.'" *Id.* (quoting *McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 36 (Tex. Civ. App. – Houston [14th Dist.] 2005, pet. denied).
>
> As with Guild's previous motion to dismiss, Ms. Adams's response here appears to ask the Court to disregard the line of cases cited above in light of a case in which a "court found that it was reasonable for the trier of fact to find that a duty of good faith and fair dealing, and even a fiduciary relationship, between a loan broker and a loan borrower." *See* Dkt. No. 47 at 1 (referring to *Kelly v. Gaines*, 181 S.W.3d 394, 413-15 (Tex. Civ. App. – Waco 2005), *rev'd on other grounds*, 235 S.W.3d 179 (Tex. 2007)).
>
> But Ms. Adams made – and the undersigned rejected – that

-16-

argument in considering Guild's previous motion to dismiss. *See* Dkt. No. 37 at 11. As the undersigned explained, *Kelly v. Gaines*, the case on which Ms. Adam relies, is distinguishable from this case. In *Kelly*, the court found that a jury could find that a fiduciary relationship between the parties existed in light of an agreement in which the defendant agreed to act as the plaintiff's agent in securing a loan. And, as the *Kelly* court explained, "[a] principal-agent relationship constitutes a fiduciary relationship as a matter of law." *Kelly*, 181 S.W.3d at 414 (citing cases). In contrast, a mortgage lender or servicer's relationship to a mortgagee is generally "'an arm's length business relationship.'" *Williams*, 2012 WL 443986 at *3 (quoting *McKinney Ltd.*, 192 S.W.3d at 36).

Courts have therefore only entertained the notion that a mortgage lender or service might owe a mortgagee a fiduciary duty where its relationship to the mortgagee was such that the mortgagee could reasonably expect the lender or service to act in his or her best interest. *See Gergan*, 355 S.W.3d at 228 (requiring proof that special relationship was created, therefore causing the plaintiff to be guided by the judgment or advice of another). "'[A] person is justified in placing confidence in the belief that another will act in his or her best interest only where he or she is accustomed to being guided by the judgment or advice of the other party, and there exists a long association in a business relationship as well as personal friendship.'" *Id.* (quoting *Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex. App. – Houston [14th Dist.] 1997, pet. denied)). The parties' special relationship must also have existed prior to and apart from the agreement in the suit. *See id.* at 229.

As in her State Court Petition, Ms. Adams alleges in her Second Amended Complaint that Guild breached a fiduciary duty to her by either assigning the Loan to U.S. Bank or selecting U.S. Bank as the mortgage service even though it knew of U.S. Bank's alleged issue with complying with the law. But Ms. Adams again fails to provide any explanation in her complaint or in her brief as to why she was "justified in believing that ... Guild had a fiduciary duty to [Ms. Adams] in the origination [and servicing] of the loan at issue" and that Guild would act in her best interest in the first place. Dkt. No. 47 at 1. Ms. Adams has not suggested that she had some long-standing relationship with Guild – separate from its relationship to the Property. *Compare Lee v. Hasson*, 286 S.W.3d 1, 15 (Tex. App. – Houston 2007, pet. denied) ("Hasson and Lee shared a long-standing business relationship and a close personal family relationship well beyond casual friendship" and "Lee relied on Hasson for moral, financial, and personal guidance or support. Moreover, their relationship began in 1993 and therefore predated their agreements by approximately six years."); *Flanary v. Mills*, 150 S.W.3d 785, 794 (Tex. App. – Austin 2004, pet. denied) (finding that a fiduciary relationship existed where the

parties were related and had a long-standing working relationship).

Nor is there any other indication in her pleadings that Ms. Adams had some objective reason to believe that she would be justified in placing her confidence in Guild or its employees to act in her best interest. Ms. Adams's Second Amended Complaint, like her State Court Petition, suggests, at most, that Ms. Adams may have had some subjective, unspecified belief that she could trust Guild. But her "subjective trust and feelings of trust and confidence [are] not ... enough to create a fiduciary relationship." *Gergan* 355 S.W.3d at 229.

Ms. Adams's claim for breach of fiduciary duty should be dismissed. And because the Court previously granted Ms. Adams an opportunity to replead her breach of fiduciary duty claim against Guild, the dismissal should be with prejudice.

*Adams v. U.S. Bank, N.A.*, No. 3:17-cv-723-B-BN, 2018 WL 2164520, at *4-*5 (N.D. Tex. Mar, 6, 2018), *rec. adopted*, 2018 WL 2150957 (N.D. Tex. May 10, 2018); *see also Snowden*, 2018 WL 4471794, at *14-*16 (same).

This same analysis applies equally to support the conclusion that Chase has met its heavy burden of establishing that Plaintiff is unable to establish a cause of action against NTFN in state court for breach of fiduciary duty because she is unable to establish the first element – the existence of a fiduciary relationship between her and NTFN. And, again, this is so even if the Court considers the expanded allegations in support of her breach of fiduciary duty claim that Plaintiff raises in her response brief. *See* Dkt. No. 11 at 3 ("NTFN was bound to seek the best terms possible for Plaintiff, and to fully disclose and explain all costs and benefits to Plaintiff of the possible transaction(s). Once NTFN became the lender for the eventual transaction, and Plaintiff was directly or indirectly paying origination fees, broker fees or a yield spread premium (sometimes known as a broker premium), NTFN became central to the overall effort to cost Plaintiff substantial monies over and above what Plaintiff otherwise might have

paid over the life of the Loan, but NTFN also inadequately disclosed the true nature and cost of the fees being paid directly and indirectly by Plaintiffs to NTFN or affiliates."). Plaintiffs's reliance on *Kelly v. Gaines* is misplaced for the same reasons that Ms. Adams's was.

Accordingly, for all of these reasons, the undersigned concludes that Plaintiff cannot state a breach of fiduciary duty claim against NTFN as a matter of law because she cannot establish that a fiduciary duty existed between her and NTFN.

Chase also contends that Plaintiff's breach of fiduciary duty claim against NTFN is barred by the four-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE § 16.004(5). Plaintiff alleges the mortgage loan at issue was originated on or about January 6, 2004 – more than fifteen years before she filed this suit. *See* Dkt. No. 1-1 at 10. If Plaintiff's breach of fiduciary duty claim is based on an alleged breach that occurred when the loan was originated in 2004, it is barred by the four-year statute of limitations. And Plaintiff has failed to make any factual allegations to demonstrate a plausible right to relief against NTFN based on the sale of the mortgage loan to Chase or BofA.

Plaintiff responds that the statute of limitations should be tolled under the discovery rule. *See* Dkt. No. 11 at 3. But, because she cannot assert a breach of fiduciary duty claim as a matter of law, the issue of when Plaintiff discovered any alleged breach of fiduciary duty matters not.

Accordingly, the Court should find that NTFN has been improperly joined and that subject matter jurisdiction exists based on the complete diversity between the

remaining, properly joined parties. *See Smallwood*, 385 F.3d at 575 ("In every case where a diverse defendant proves that the plaintiff's decision to join an in-state party is improper, the diverse defendant gains access to the federal courts."). And, because once the Court determines that NTFN was improperly joined, the Court should further order that Plaintiff's claim against NTFN be dismissed without prejudice. See *Alviar v. Lillard*, 854 F.3d 286, 291-92 (5th Cir. 2017).

## Recommendation

For the reasons explained above, the undersigned concludes that Defendant NTFN, Inc. was improperly joined; that Plaintiff's claims against NTFN should be dismissed without prejudice; that complete diversity of citizenship exists; and that the Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court,

except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 16, 2019

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE